## In the matter of the appeal of Angeolina Wisner, Executrix of Moses Wisner, deceased.

*Mortgage : Primary fund : Conveyance and devise of the same premises.* A grant, reserving a life estate in the grantor, having been made by deed and accepted by the grantee,—the same premises being devised to the grantee by will bearing date the day after the deed, and the deed and will delivered to the grantee at the same time,—on the death of the grantor the estate granted by the deed will be immediately reduced into possession and leave nothing for the will to operate upon. And the grant being made expressly subject to a mortgage on the premises, thè entire estate is charged with the mortgage debt, for the discharge of which, the premises are the primary fund. The position of the grantee in the deed is that of a purchaser, who, taking subject to the mortgage, would have no right, on the payment of the mortgage debt, to call upon the grantor for reimbursement: such payments, when made, are in exoneration of the property from a burden to which the title was expressly subject, and therefore no claim can be maintained on them against the estate of the deceased grantor.

*Heard May 12. Decided May 26.*

Case made from Oakland Circuit.

Mrs. Angeolina Wisner, executrix of Moses Wisner deceased, presented to the Probate Court of Oakland County for allowance a claim for the payment of the sum of $3151, 73, to discharge a mortgage made by the deceased and resting on his homestead at the time of his death. The allowance of the claim was opposed on the ground that the deceased had conveyed the homestead to Mrs. Wisner, reserving a life estate in himself, expressly subject to the mortgage for the payment of which she seeks to be reimbursed. It also appeared that on the day after the date of the deed, and before its delivery, the deceased executed a will devising the same property to Mrs. Wisner; and that the deed and the will were delivered together to Mrs. Wisner

by the deceased, just before leaving home with the regiment of which he was in command to join the army in Kentucky, where he died. On the day after he left home, Mrs. Wisner caused the deed to be recorded.

The Probate Court disallowed the claim, and Mrs. Wisner appealed to the Circuit Court for the County of Oakland; where, after a trial before the Circuit Judge, without a jury, the judgment of the Probate Court was affirmed; and the cause now comes before this Court by case made.

*Crofoot & Brewer*, for Executrix.

I. The only point relied on in opposing this allowance is that Gov. Wisner, on the 25th day of August 1862, made a deed to his wife of the mortgaged premises subject to the mortgage, which deed was delivered to her as early, at least' as the 5th day of September of the same year, and that thereby the title to this homestead farm became vested in her, and that at the date of his death, 5th of January 1863, there was no title in the testator in this specific bequest; and, that therefore, the will could not operate upon it: and it is claimed—1st. That as the deed was made subject to the mortgage, the debt became thereby primitively the debt of Mrs. Wisner, which she was obliged to pay and discharge upon her own account; and—2. That in any event the mortgaged premises became the primary fund for the payment of the mortgage debt: and therefore, as Mrs. Wisner held the title to this mortgage property, she could not in the course of administration, until this primary fund was exhausted in paying the mortgage debt, pay any part of it and charge it to the estate.

As to the *first* point, we say that the debt did not by the language used in the deed, become a debt against Mrs. Wisner the grantee; and the most that can be claimed from the terms used in the deed is that she was but the grantee of the equity of redemption. She did not by accepting such a deed become personally liable to the mortgagee or to

her grantor. We do not think this position will be seriously controverted, but we cite,—*Belmont v. Coman, 22 N. Y., 438; Pike v. Brown, 7 Cush., 133; Braman v. Dowse, 12 Cush., 227; Stebbins v. Hall, 29 Barb., 524.*

As to the *second* point, we are willing to admit in this case, that as between vendor and vendee in a case of bargain and sale, if the vendee accepts a conveyance, subject to the payment by himself of an encumbrance upon the land conveyed, the land becomes the primary fund for the payment of the encumbrance; but this is not the rule in regard to *descended or devised estates.* The rule in regard to the funds liable for the payment of *the debts of the testator* is stated in the authorities placing the funds liable therefore in the following order: 1, The general personal estate. 2, Estates specifically and expressly devised for the payment of debts, and for that purpose only. 3, Estates descended. 4, Estates *specifically devised,* though charged generally with the payment of debts.—*Donn v. Lewis, 2 Br. Chy. C. 257; Milnes v. Slater, 8 Vesey, 295; Livingstone v. New Kirk, 3 Johns. Ch. R., 312, 328; Manning v. Spooner, 3 Vesey, 114; 2 Red. on Wills p. 864 Chap., XVIII. § 74. p. 868. § 18. p. 869, and Notes.*

. And in regard to encumbered real estate, devised or descended, the rule at the common law was, that if the encumbrance was one created by the testator as for his personal debt, the personal estate was chargeable with the payment of the debt. If the encumbrance was created before the purchase by the testator, and he had not himself become liable for the debt, then the encumbered property was the primary fund for the payment of the debt, and the heir or devisee must take it subject to the charge therefor. This rule is elaborately discussed by Chancellor Kent in the case of the Duke of Cumberland v. Coddington, *et al.—3 Johns. Ch. 229, 272.*—This rule in regard to encumbered property was changed in England and N. Y., by statute.—*1 N. Y. R. S., 749, S. 4; Jumel v. Jumel, 7 Paige, 591, 593; Halsey*

*v. Reed, 9 Paige, 454; House v. House, 10 Paige, 158; 2 Red. on Wills, p. 876, Chap. XVIII. 29.*

II. The case relied upon to sustain the objections to the allowance of this account is—*Jumel v. Jumel, 7 Paige, 591.*—In that case Jumel *died intestate*—his wife administered on his estate. In this Jumel case however, the Chancellor found as matter of fact that the conveyance to Mary Jumel Bownes was a bona fide sale, and the decision proceeded upon that theory.

We shall not contend in this case, but that if Mrs. Wisner the grantee in the deed, had *purchased* the premises under an agreement that she took the premises subject to the payment of the mortgage, and after accepting a deed thus expressing the terms of the contract, her husband had died *intestate*, she would be equitably estopped from claiming from the estate reimbursement of these payments, until the mortgaged premises had been exhausted.

III. We claim in this case that the *will* must control this question; and in that event the appellant is clearly entitled to have this claim allowed. Can it be doubted from the language of the will that the testator, standing with this deed in his hand yet undelivered and uncertain whether it would be upheld as a grant, intended in this testamentary disposition of his estate, to give this property to his wife free of incumbrance and debts? The will in this respect *speaks from its date.*—*1 Red. on Wills, p. 425 Note; 1 Red. on Wills. p. 380. Chap. IX. 3.*—And the will in respect to *specific legacies* always speaks from its date.

The *intention* of the testator in regard to these *specific legacies*, and the payment of debts as affecting them, must be considered from the date of the will.—*1 Red. on Wills, p. 432, 433.*—And in the cases it is said that the Court should stand in place of the testator, and from the language of of the will and the surrounding circumstances, give effect to the intention of the testator.—*1 Red. on Wills, p. 436. Chap. IX. 24; Malcolm v. Malcolm, 3 Cush., 472; Osborn v.*

*Shrien, 3 Mason, 391; Sisson v. Seabury, 1 Sum., 235; Andrews v. Bishop, 5 Allen, 490.*

It is claimed that by the acceptance of the deed by Mrs. Wisner, after the will was made, this property, "the homestead and farm," passed to her as grantee; and therefore, at the time of the testator's death, the title stood in Mrs. Wisner and not in him, that there was then left in the testator nothing upon which the will could operate, in respect to this specific devise. Even if this be true, it cannot change the right of Mrs. Wisner to have this claim allowed to her in her administration account. She paid the same out of her own means, when payment was demanded by foreclosure, because she did not have money in her hands belonging to the estate, out of which to make payment. If it was then properly paid by her as a legal debt against the estat e she is entitled to reimbursement.—*2 Red. on Wills, p. 870, Chap. XVIII. 19.*

To hold this land, charged by the testator as the primary fund, with the payment of this mortgage would, as we claim, do violence to every rule of construction, and would utterly pervert and defeat the real intent of the testator. The early cases require great strictness and explicit words to exonerate the personal estate from the primary liability of payment of debts, to the prejudice of devised or descended encumbered real estate.—*Fereyes v. Robertson. Bunb. 301; Duke of Ancaster v. Mayer, 1 Br. C. C. 454; 2 Red. on Wills, p. 855, chap. XVIII, 9 and notes ; p. 875, 26 and notes; p. 877, 30 and notes; Hoff's Appeal, 24 Penn. St. R. 200; Mitchell v. Mitchell, 3 Md. Chy., Decisions 71; Thompson v. Thompson, 4 Ohio, N. S. 333.*

And to show how strictly the Courts adhere to the rule of following the intention of the testator in cases like this, we cite—*Hewes v. Dehon, 3 Gray, 205; Andrews v. Bishop, 5 Allen, 490.*

*O. F. Wisner*, in person.

The deed from Moses Wisner to the appellant vested in her the grantor's interest in the mortgage premises, the equity of redemption.—*Burdeno v. Amperse, 14 Mich., 91.*— The execution and delivery of the deed amounts to a revocation of the will so far as the devise of the land to appellant is concerned.—*Red. on Wills. pt. 1st, 339, and cases cited.*—By accepting the deed appellant assented to its terms ; and as between her and her grantor, or his estate, she became bound to pay the mortgage out of her own funds.— *Newell v. Hall, 2 Metc., 180 ; Pike v. Brown, 7 Cush., 133 ; Braman v. Dowes, 12 Cush., 228.*

The principal question in this case is : Can one who purchases an estate expressly subject to what remains unpaid upon a mortgage thereon, and who subsequently pays the mortgage, call upon the grantor, or his estate, to refund the amount paid upon such mortgage ? Many cases may be found where the question as to the *personal liability* of such purchaser *to the mortgagee* for the mortgage debt has arisen. The courts holding *as a rule* that such liability exists where the purchaser agrees to pay the debt.—*Hartly v. Harrison, 24 N. Y., 170; Burr v. Beers, 24 N. Y., 178; Russel v. Pistor, 3 Seld., 173; Lewis v. Covillaud, 21 Cal., 178,*—are in favor of such rule. Against such *personal liability,*—see *Mellen v. Whipple, 1 Gray, 317.*

As to the right of such purchaser to recover from the grantor the moneys paid to discharge the mortgage, we submit there is no such right.—*Baker v. Terrell, et al., 8 Minn., 195.* — Paying the mortgage is nothing more than the law would require of such purchaser in order that he might derive any benefit from his purchase of the mortgagor's equity of redemption.—*Mellen v. Whipple, 1 Gray, 317; Lewis v. Covillaud, 21 Cal., 178; Klapworth v. Dresler, 2 Beasley, 62; Buttrick v. Wentworth, 6 Allen, 79;*

*Kinnear v. Lowell, 34 Me., 299; Cheny v. Monroe, 2 Barb. Ch., 618.*

In the case of *Jumel, Administratrix, &c. v. Jumel & Lagardere*, in New York, precisely the same questions arose as in the case at bar.

GRAVES, J.

Upon the final settlement before the Judge of Probate of the account of Mrs. Wisner as the executrix of her husband, the late Governor Wisner, certain items in her account amounting in the aggregate to $3151.73 paid by her in satisfaction of a mortgage upon the homestead place, formerly belonging to the testator, were disallowed and she appealed to the Circuit Court, where the disallowance by the Judge of the Probate was affirmed.

It appears by the record that in 1857 Mr. Wisner gave his note to Catharine H. Wisner for $3000, and to secure the payment of the same, executed his mortgage on his homestead to said Catharine H. Wisner. That in the summer of 1862, while in command of a regiment of volunteers then organized at Pontiac, in this State, where he resided, he was ordered to the field with the regiment, and in August of that year made preparations to repair to one of the Southern States in compliance with the order. That under these circumstances and on the 25th of August 1862, he executed to his wife, the said Angeolina Wisner, a deed purporting to convey to her the remainder in fee in the homestead, upon which he resided, and to become an estate in possession on the termination of an estate for his own life, which he saved to himself. The consideration stated in the deed was $10,000 together with other good and valuable considerations, and it was expressly declared in the instrument, that the conveyance was subject to what remained unpaid on the mortgage to Catharine H. Wisner, and the covenant against incumbrances in the deed also ex-

pressly excepted this mortgage. The deed was acknowledged on the day of its date.

It farther appears that on the succeeding day, Mr. Wisner made his will and appointed Augustus C. Baldwin executor and his wife, the said Angeolina, executrix thereof. That by the first clause of the will the testator declared that after all his lawful debts should be paid, he devised the homestead in question to his wife, the said Angeolina in fee, and by the second clause that he gave to his four children all the residue of his estate real and personal whether then possessed or subsequently acquired. That on the 3rd of September following, the testator made his general power of attorney to his said wife, by which he empowered her generally to transact business for him and especially to sell and convey his real estate, and that just before he left home for the South, which was on the 4th of September, he handed the deed and will to his wife and they were then placed by her in the safe. That on the day after, being the 5th of September 1862, she caused the deed to be placed on record; and before any further payments were made on the mortgage, and on the 5th of January 1863, the testator died in the state of Kentucky. It was also shown that when this deed was given, Mr. Wisner was possessed of personal property of the value of about $5,000, the whole of which he conveyed to his wife Angeolina, and it does not appear that he subsequently acquired any or that he was possessed of any at the time of his death. On the 4th of April 1863, the widow paid the first item of $100 on the mortgage, but in some little time thereafter Mrs. Catharine H. Wisner, the mortgagee, commenced a foreclosure of the mortgage making Mrs. Angeolina Wisner, the the widow and grantee, a party in her individual character only, and thereupon the latter paid the balance of the mortgage debt out of her own means.

Such are the main facts in the case, and the question is whether the mortgage to Catharine H. Wisner was, as

20 MICH.—E³.

between Mrs. Angeolina Wisner and the estate of her husband not devised to her, a debt which she could compel the latter to discharge.

It is very clear that Mrs. Angeolina Wisner accepted the grant from her husband upon the terms upon which it was made, and thereby became the owner of so much of the equity of redemption as the deed assumed to convey. While the husband retained a life estate, the wife obtained by the conveyance a vested remainder in fee, subject to the mortgage, and it is manifest that the same event which gave the will effect, terminated the precedent life estate, reduced the estate conveyed by the deed into possession, and left nothing in the homestead property for the will to operate upon.

There are some reasons for contending that during the existence of the precedent estate which the mortgagor retained, when he conveyed the remainder to his wife subject to the mortgage, the owner of the remainder could not compel the owner of the life estate to pay the mortgage debt or any part of it, but a decision of this case does not require us to determine that question.

The extinction of the life estate, which left the whole estate in the homestead in Mrs. Wisner under the grant from her husband, precluded the raising of any question between the two estates as to marshaling the mortgage debt. Upon the termination of the precedent estate, the whole mortgage debt rested absolutely upon the entire estate in the homestead, as that estate was held by Mrs. Wisner as grantee expressly subject to that debt. Her position therefore on the death of her husband was that of purchaser of the entire homestead property subject to the mortgage, and all the payments made by her were subsequent to the extinction of the life estate, and were made in exoneration of the property from a burden to which the title she took, and as she accepted and held it, was expressly subject. When a mortgagor conveys the whole equity of redemption

expressly subject to the mortgage, the mortgaged premises are the primary fund for the payment of the mortgage debt, as between mortgagor and vendee, and if the latter pay the mortgage he cannot call upon the former for reimbursement.—*Mason v. Payne, Walker's Ch. 459; Baker v. Terrel, 8 Minn. 195.*—This principle applies forcibly to the present case. The rights of Mrs. Wisner as against the estate of her husband are certainly no stronger than those of the vendee against the mortgagor.

There is another circumstance not undeserving of notice, although we do not rest our judgment in any degree upon it.

In administration cases, the general principle of marshaling which saves the whole or a part of the realty from the burden of the testator's debts is not founded in any preference of one portion of the real estate over another, but proceeds upon the idea that the personal estate is the primary fund for the payment of those debts for which the testator was personally liable unless, by express words, or otherwise, a different intent is plainly apparent. Now the record before us not only fails to disclose the existence of any personal estate which could be subjected to the payment of the debt in question, but contains facts having some tendency to show that there was none, while by the will it appears that aside from the homestead the testator devised all his real estate after payment of his debts to his children. If it be true that there was no personal estate, the burden of the mortgage debt could not be averted from the homestead without discriminating between the real estate conveyed to the wife, and that devised to the children, in order to impose a burden upon the latter which orignally devolved upon the former. It is quite certain that a course of that kind could not be based upon the general doctrine of marshaling as between real and personal estate, and if allowable in any case it could be so only upon reasons which are totally wanting here.

The order of the Circuit Court must be affirmed with costs.

The other Justices concurred.