[Nos. 15885, 15886.    Department Two.—March 15, 1895.]

IN THE MATTER OF THE ESTATE OF SOLOMON HEY-DENFELDT, DECEASED. ZEILA O. HELLINGS, APPELLANT.

WILL—CONSTRUCTION—DIRECTIONS FOR PAYMENT OF DEBTS—CONVEYANCE TO CHILDREN PRIOR TO DEATH.—The testator, prior to his death, conveyed portions of his real estate to his children, by deeds which were placed in escrow, to be recorded at his death. One of these deeds conveyed to the appellant a lot worth about sixty-five thousand dollars, upon which, and upon another lot conveyed to other children, there was a mortgage to secure the payment of forty thousand dollars. By his will the testator directed his debts to be paid from the proceeds of the sale of his unproductive property. The will recited the execution of the deeds, and the provision thus made for the children, and devised the residue of his estate to his wife. The unproductive property of the estate sold for about forty-three thousand dollars, from which, after payment of the other debts, the executor had remaining more than forty thousand dollars. *Held,* That the testator intended to exonerate the property conveyed from the mortgage debt, and to charge his estate with the payment thereof.

ID.—JURISDICTION—COMPELLING EXECUTOR TO PAY DEBTS.—In a proceeding for the settlement of the estate of such testator the superior court has jurisdiction, at the instance of such grantee, to compel the executors to pay the mortgage debt from the assets of the estate.

APPEALS from orders of the Superior Court of the City and County of San Francisco, rendered in a proceeding for the settlement of the estate of a deceased person.

The facts are stated in the opinion of the court.

*T. M. Osmont,* for Appellants.

*Craig & Meredith, Pierson & Mitchell,* and *Knight & Heggerty,* for Respondents.

TEMPLE, J.—Solomon Heydenfeldt died testate September 15, 1890, leaving a widow and ten children. The widow was the mother of five of the children, all minors. The deceased had been the owner of much real estate in San Francisco. In anticipation of his death, he conveyed portions of his real estate to his children, but the deeds were placed in the hands of one Charles Ashton by the grantor, to be recorded at his death. The record does not show expressly whether the grantees named in the respective deeds were let into possession upon the execution of the deeds, or whether the grantor continued to receive the rents and profits until his death. Presumptively, the latter was the case, for there would seem to be no other reason for retaining the deeds, and certainly for some purposes the grantor continued after the execution of the deeds to treat the property as his own. One of these deeds, executed October 10, 1887, conveyed to appellant and her brother, Thomas O. Heydenfeldt, a lot in San Francisco worth about sixty-five thousand dollars. At the time the deed was executed and left with Ashton, as above stated, there was a mortgage upon it to secure the payment of the sum of forty thousand dollars, borrowed by the testator from the German Savings and Loan Society. It covered not only the lot conveyed to Hellings, but also a lot conveyed to three other children.

April 12, 1889, the mortgage being about to become barred by the statute of limitations, Heydenfeldt executed a new mortgage for the same amount and charging the same real estate.

October 9, 1889, deceased made his will, which contained the following provisions: "Item 1. I direct my executors to pay all debts which I may owe at my decease, from proceeds of sale of my unproductive property. . . . .

"Item 3. I have already made such provision for each and all of my children as I deem consistent with the value of my estate by deeds executed and delivered to Charles Ashton, of San Francisco, for their benefit;

and I therefore give and devise and bequeath all of the rest and residue of my estate, both real and personal, to my wife, Elizabeth Angeline Heydenfeldt," etc.

None of the children received any thing under the will, nor was it shown that they received at any time any part of their father's estate, except by the deeds aforesaid. It is certain they received nothing else in anticipation of the death of their father, and in the final distribution of his estate.

The executors named in the will were duly appointed and they duly qualified. It is shown that they sold the unproductive property, realizing from such sales about forty-three thousand dollars, of which, after payment of the debts, they still have more than forty thousand dollars.

October 6, 1893, Mrs. E. A. Heydenfeldt, the widow of deceased, filed a petition in the probate court asking for a distribution of the estate. In her petition she states that all the debts and expenses of the estate have been paid, and that petitioner is entitled "to all of the estate of said deceased and the profits thereof."

October 20, 1893, appellant, who is a daughter of the testator, filed her petition, in which she set out most of the facts above recited, and that the debt secured by mortgage upon the property conveyed to her and Thomas O. Heydenfeldt had not been paid, that the unproductive property had been sold as directed by the will, and that from the proceeds the executors had in their hands sufficient money to pay said mortgage debt and all other debts of the estate. That the mortgagee had duly presented the debt secured by the said mortgage to the executors, and the same had been allowed, and that the mortgagee had commenced an action to foreclose the same, which action was then pending. That it was the intention of the testator to exonerate the property conveyed to herself and brother, and charge his estate with the payment thereof.

The petitions were set for hearing at the same time, as was also the application to settle the final account of

the executors.  At the appointed time the application of appellant was first taken up.  A reply to the petition was interposed by Mrs. Elizabeth A. Heydenfeldt and by her children, and all appeared by attorney.  Evidence was also taken and submitted.  She was denied the relief asked.  The final account was settled.  The application for distribution was then taken up, and appellant objected to the distribution being made until the mortgage debt was paid.  The court, however, proceeded to distribute all the property to Mrs. E. A. Heydenfeldt.

Appellant has brought two appeals to this court: one from the order refusing her petition, and the other from the decree of distribution.  They were submitted together, and do not require separate consideration.

Upon these facts counsel for appellant contends that the provisions recited from the will constitute a testamentary assumption of the mortgage debt, and the lot conveyed to her and her brother is thereby exonerated.

On the other hand, the respondents argue that the effect of item 1 in the will is simply to provide that the debts shall be paid from the unproductive real estate rather than from the personalty which is given to the widow.  That the lot conveyed to appellant at the time of the execution of the will and of the death of the testator was no part of the estate of the testator, and by law constituted the primary fund for the payment of the mortgage debt.  That the estate was only liable for the deficiency, if any, after applying the proceeds from the sale of the mortgaged premises.  That it is such debts as could have been proven under the law, and could have been made a charge against the estate of the deceased that are provided for in the will.

Furthermore, if appellant had any grievance arising from the fact that her property was wrongfully charged with the encumbrance, or from the covenant in her deed, she should have presented her claim against the estate.  She did not do so, and now has no remedy.

Appellant bases her rights entirely upon the claim

that the will exonerates her property. If the will does not provide for the payment of the debt, her appeal must fail.

If the provision in regard to the payment of debts stood alone, and we knew nothing of the condition of the estate, and the circumstances under which the deed was made, the construction given it by respondents would be very plausible. Directions for the payment of debts are found in nearly every will; and it has been said that they are as formal and meaningless as the pious phrases with which many wills are prefaced. They, of course, have greater significance where the personalty descends to the personal representative and the realty to the heir, and where real estate is devised to the executor with which to pay debts, than here where the entire estate is liable for all the indebtedness. And yet, while caution should be exercised not to give such formal words too much importance, if the circumstances indicate that they express a special testamentary intent, the fact that nearly all wills contain such directions should not render them ineffectual.

The testator executed and left as escrows deeds to all his children. When he executed this deed to appellant the debt was not only due, but within about two years of becoming barred by the statute of limitations. It does not appear that he thought death then imminent. In form the deed contained a covenant against encumbrances created by the grantor. He expressed a desire during his life to sell property to pay his debts. It does not appear that he owed any debts at the time, or when he made his will, except the mortgage debt.

When he died, which was within a year after the date of his will, he owed scarcely any thing except the mortgage debt. Mr. Ashton testified that he was trying to sell the Post street property to pay his debts. He did not succeed in selling it. Ashton knew of no debts save the mortgage debt. He could not have owed much besides. Since all the property was given to the widow, with full power to encumber, or to dispose of it abso-

lutely, there was no occasion to require his unproductive real estate to be sold to pay his debts, unless the intent was thereby to exonerate the mortgaged premises. It would have been better to leave the widow, who was to be practically absolute owner of the property, free to take advantage of opportunities.

Aside from the mortgage debt the trifling sum owed could have been easily managed. It will be noticed that he does not direct or authorize the executors to pay the expenses of administration from the fund thus created. It is devoted solely to the payment of his debts, and, if the contention of appellant is sustained, she is entitled to have it all, if necessary, so applied, undiminished by the payment of expenses.

And the unproductive property, as sold by the executors, produced a sum surprisingly near the amount of the debts of the testator, if he intended that the mortgage should be paid from the fund, but twenty times as much as was required if this debt was not to be paid from it. The amount of the fund created is a strong circumstance tending to show the intent of the testator.

The conclusion that the testator intended that his executors should pay the mortgage debt becomes irresistible when we add the evidence of the other provision of the will above set out. By it he declares that by those deeds he has made provision for his children in view of death. They are in the nature of and were intended to effect the succession to his estate by his children. And recognizing the deeds as such, he therefore gives the residue to his widow. The residue is expressed as what will be left after deducting the property conveyed to make provision for his children, and after payment of all his debts. This is a distinct recognition of the deeds then held by Ashton as escrows as a part of his testamentary disposition of his estate. It would make no difference if the deeds had been actually delivered to the grantees named. This provision would still constitute them part of the testamentary disposition; nor is it necessary to say that the provisions of the Civil Code

marshaling assets to pay legacies and devises apply *ex vi termini*. The rule there prescribed is older than the code, and is based upon the presumption of intent by the testator from the nature of the gifts.

So we see all presumptions, whether arising from the circumstances or the rules of law, point the same way. Appellant is only seeking to have the fund created by the testator applied to exonerate her property. She is certainly entitled to that much.

There can be no doubt of the power of the probate court to grant the relief. That court has jurisdiction to determine all questions which can arise as to the succession, and all questions between heirs, legatees, and devisees in regard to their rights as such. The practice is precisely the same that it would have been had the purpose of the testator, as here declared, been plain. It cannot be doubted that in such case the devisee could ask the court to compel the executors to so execute their trust as to secure to her the benefits conferred by the will. The court could take into consideration the condition of the estate, and compel the executor to take steps to get the money or to pay at once according to circumstances.

The decree of distribution was erroneously entered. The objections of the appellant were submitted in due time. The subsequent effort to have the objections appear more formally, that a proper exception could be taken, was not unreasonable. The matter is now, however, of little consequence, as all the proceedings can be reviewed on the appeal from the first order.

The order and the decree are reversed, and the cause remanded.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.