[S. F. No. 2916.    In Bank.—March 13, 1903.]

In the Matter of the Estate of ISABELLA PORTER, Deceased. ALLINA McKENZIE, and FINLEY CAMPBELL, Appellants, v. ERNEST A. RATHBUN, Executor, Respondent.

WILL—SPECIFIC DEVISE OF LAND—DEED—ENCUMBRANCE NOT SPECIFIED—MAXIM.—Where land is specifically devised, and the same land is granted two days after the making of the will to the devisee and her husband, without any statement in the devise or deed as to an encumbrance on the land, the deed and devise should be construed together as indicating the intention of the testator that the land should be taken subject to the encumbrance of a mortgage thereon, the maxim being applicable, that he who takes the benefit must bear the burden.

ID.—COVENANT NOT IMPLIED.—In a specific devise or deed of gift there is no implied covenant against encumbrances.

ID.—ENCUMBRANCE NOT CHARGEABLE TO OTHER LAND SPECIFICALLY DEVISED.—Whatever validity any deficiency arising after foreclosure of the mortgage may have as a claim against the estate, the grantee or devisee subject to the mortgage cannot claim exoneration therefrom by making the amount of the encumbrance a charge upon other lands specifically devised.

APPEAL from an order of the Superior Court of Alameda County directing the sale of real estate. F. B. Ogden, Judge.

The facts are stated in the opinion.

Gibson & Woolner, and W. H. L. Hynes, for Appellants.

The estate of the mortgagor could in no event be liable to the mortgagee, except for a deficiency arising after sale of the mortgaged premises. (*Biddel* v. *Brizzolara,* 64 Cal. 354; *McKean* v. *German-American Sav. Bank,* 118 Cal. 334; *Hibernia Sav. & Loan Soc.* v. *Thornton,* 123 Cal. 62.) In this case, the estate has no interest in the property mortgaged, and the mortgage cannot be a proper claim against the estate. (*Pitte* v. *Shipley,* 46 Cal. 161; *Harp* v. *Calahan,* 46 Cal. 230; *Schadt* v. *Heppe,* 45 Cal. 433.) The mortgage is not due, and an order to sell real estate specifically devised, to pay the whole amount, without sale of the mortgaged premises, cannot be justified.

Frederick E. Whitney, for Respondent.

The order of sale was proper. (*In re Heydenfeldt,* 106 Cal. 434.)

COOPER C.—This is an appeal from an order directing the sale of real estate. The facts are as follows: On April 3, 1897, deceased executed her last will, which contained the following clauses:—

"First. I direct that my executors, hereinafter named, pay all my just debts, my funeral expenses and expenses of my last sickness out of the first money that shall come into their hands out of my estate.

"Second. I declare that I am the owner of one hundred and sixty acres of land in Contra Costa County, aforesaid, described as follows, to wit:—

"The N. 1-2 of the S. E. 1-4 of section 3 and the N. 1-2 of the S. W. 1-4 of section 2, T. 1, S. R. 3, E. M. D. M., subject to a charge of $1,000, to be paid to the brothers and sisters of my late husband, Andrew Porter, as provided in a deed from him to me dated the 10th day of December, 1895, and recorded in the office of the county recorder of Contra Costa County, in vol. 70 of deeds, at page 496.

"Third. I give, devise and bequeath to my daughter, Allina Hoffman, the west sixty acres of the 160-acre tract of land above described, to be given to her free from all charge or encumbrance of any kind.

"Fourth. I give, devise and bequeath to my son, Finley Campbell, the remainder of said 160-acre tract of land, being the east 100 acres thereof, and out of the same he is to pay said one thousand dollars above mentioned, or out of the rents and profits thereof, which payment I hereby make a charge against said 100 acres hereby devised to my said son.

"Fifth. I give, devise and bequeath to my daughter, Elizabeth Rathbun, my house and lot situated on Wood Street, in the city of Oakland, county of Alameda, state of California, and also all my interest (being one-half thereof) in a certain mortgage and promissory note for $5,000.00 made by Allison F. Byer and Ida E. Byer to Andrew Porter, August 8, 1895, and recorded in vol. 35 of mortgages, on page 52, records of mortgages, recorder's office, Contra Costa County.

"Sixth. I give, devise and bequeath to Sarah J. Maclean, my land known as the 'home place,' consisting of about two acres near Byron, in Contra Costa County.'"

Two days after making the will the deceased, by a deed of gift, conveyed the Wood-Street property to her daughter, Elizabeth Rathbun, and her son-in-law, Ernest E. Rathbun, husband of Elizabeth; being the same property devised to Elizabeth in the will. The value of the said Wood-Street property is not shown in the record, but at the time of the execution of the will, and of the making of the deed, it was encumbered by a mortgage given to one Page to secure a promissory note made by deceased, dated September 1, 1896, for $2,650. The record also fails to show the amount due upon the note and mortgage at the time the will and deed were executed.

The deed made no reference to the will, nor to the mortgage, and there does not appear to have been anything said orally as to the lien of the mortgage.

In October, 1898, the said Isabella Porter died, leaving surviving her the three children named in the will, and the devisee, Sarah J. Maclean, a minor. Rathbun, the son-in-law, was appointed executor of the will and ever since has continued to be such executor. The estate consists of a small

amount of personal property appraised at thirty-seven dollars. The one hundred and sixty acres of land devised to Allina Hoffman and Finley Campbell, appraised at five thousand dollars, and the two acres devised to Sarah J. Maclean, appraised at nine hundred dollars.

The claims allowed against the estate, outside of the claim on the Page mortgage, are small, and have been paid by the devisees, and they also offered to pay the attorney's fees, commissions, and expenses of administration. The claim of Page upon the note and mortgage was allowed for a balance of $1,490, and the question is as to whether or not the real estate so specifically devised shall be sold to pay the amount of this claim. There is no doubt but that Page could hold the estate for the balance due after exhausting his security by foreclosure and sale under the mortgage; but as that question is not before us, and as the bill of exceptions shows that the mortgage secures the note and claim, it becomes unnecessary to further discuss it. The issue may then be reduced to the single proposition as to whether or not the encumbrance upon the property deeded to Rathbun and wife shall be exonerated by a sale of the other lands specifically devised. The deed having been made so near the time of making the will, and being a conveyance of the property devised to one of the same devisees named in the will, it would be difficult to separate the two instruments for the purpose of arriving at the intention of deceased. In fact, we must consider them together, and if possible give them the effect intended to be given them by deceased. She intended to give to each of the devisees named a specific piece of real estate, and did do so by the will. She gave her daughter, Allina Hoffman, sixty acres free of all charge or encumbrance of any kind. She gave her son, Finley Campbell, one hundred acres and expressly mentioned that he should pay out of his portion a certain one-thousand-dollar mortgage which was a lien on the entire one hundred and sixty acres. It is thus evident that the testatrix had in mind the fact that she desired to exonerate the sixty acres given to the daughter and to impose the burden upon the son of paying the one-thousand-dollar mortgage. On the home place, given to Sarah J. Maclean, there was no mortgage, and nothing is said in the will as to any.

In the devise to her daughter Elizabeth she said nothing

as to the encumbrance, evidently intending for her to take it as it was, and subject to the mortgage. And it is a very significant circumstance that she also devised to her daughter Elizabeth a half-interest in a promissory note and mortgage for five thousand dollars. The one half of this would probably have been sufficient to pay off the Page mortgage; and the fact that upon the death of the deceased it had been reduced to $1,490 shows that some one had been paying it. As to whether or not the payment was made by the deceased or by her daughter out of the proceeds of the five-thousand-dollar mortgage does not appear. But a very significant fact does appear, and that is, that neither the half-interest in the five-thousand-dollar mortgage nor the proceeds thereof appears among the assets of the estate. Elizabeth and her husband, by the deed, took all the property which had been devised to her. She probably received the half-interest in the mortgage, as it is not accounted for, and it was given to her by the will. She now seeks to obtain a sale of the remainder of the real estate for the purpose of paying an encumbrance for her benefit. If this should be done, the result would be to practically deprive the other devisees of the property given to them by the deceased. It would be to give the grantees in the gift deed the property, freeing it of the burden of the mortgage and casting it upon others. He who takes the benefit must bear the burden. (Civ. Code, sec. 3521; Wharton's Legal Maxims, No. 80.)

To place the burden upon the lands of the other devisees would be to reverse this maxim. If there were personal property or real estate not specifically devised sufficient to pay all debts, the question would be very different. At common law the personal property was considered the primary fund for the payment of debts, and the heir or devisee had the right to call upon the executor to exonerate the land by discharging the mortgage debt out of the personal estate, and this doctrine was founded upon the principle that the personal estate had the benefit of the money for which the mortgage was given. But the rule did not apply to estates purchased by the testator or intestate while under the encumbrance, unless he had made it his own debt, because the reason of the rule did not apply to such case. Of course, in any case, the testator may direct that the mortgage debt be paid, or use such words as clearly show such intent. Some

stress is laid upon the direction in the first clause of the will
to ''pay all my just debts,'' but in this case we attach little
importance to the words used in the formal manner in which
they are used. They are much like the formal, meaningless
terms of endearment and pious phrases printed in the formal
part of blanks for making wills. We think the views herein
expressed are supported by the authorities, although the cases
all depend more or less upon the particular facts of each
case. It is the general rule that the devisee or heir of a
mortgaged estate cannot claim exoneration out of specific
legacies. (2 Wœrner on American Law of Administration,
2d ed., pp. 1105, 1106, sec. 494; 2 Jarman on Wills, 6th ed.,
p. 1445.) The latter author says: ''But the devisee of a
mortgaged estate is not entitled to have it exonerated out of
personalty specifically bequeathed, a point which was deter-
mined in *O'Neal* v. *Mead,* where a testator having devised
lands which he had mortgaged to his eldest son in fee, and
bequeathed a leasehold estate to his wife, it was held that the
leasehold premises, being specifically bequeathed, were not
liable to pay off the mortgage. And, *a fortiori,* a specific
legatee of encumbered leaseholds cannot call upon a specific
legatee of unencumbered leaseholds to contribute towards the
liquidation of the mortgage debt affecting the former ex-
clusively.''

In *O'Neal* v. *Mead,* P. Wms. 693, which is referred to by
Jarman in the passage quoted, it was said nearly two hundred
years ago: ''But the master of the rolls, after taking time
to consider it, and being attended with precedents, decreed
that as the testator had charged his real estate by this mort-
gage, and on the other hand specifically bequeathed the
leasehold to his wife, the heir should not disappoint her legacy
by laying the mortgage debt upon it, as he might have done,
had it not been specifically devised; and though the mortgaged
premises were also specifically given to the heir, yet he to
whom they were thus devised must take them *cum onere,* as
probably they were intended.''

· In *Dean* v. *Rounds,* 18 R. I. 437, the question is discussed in
some of its phases, and the court said: ''As to specific lega-
cies the law doubtless is, that in marshaling the assets of an
estate such legacies cannot be applied in exoneration of a
devisee from an encumbrance to which the testator had sub-
jected the devised estate.''

The late case of *Hedger* v. *Judy*, 95 Ky. 557, decided by the court of appeals of Kentucky, is directly in point. The testator had devised his farm to his brothers, whom he also made executors. At the time of his death there was a lien on the farm of four thousand dollars unpaid purchase money, and his other estate was not sufficient to pay this lien and also to pay the specific legacies. It was held that the brothers took the farm subject to the lien. It was said in the opinion: "To say that, notwithstanding the anxious desire thus shown for the welfare and support of his helpless child, he expected and intended all provision of his will in regard to him to become nugatory, would be unreasonable. In our opinion, the testator intended each clause of his will to take effect and be carried out, and, therefore, did not desire or expect his estate to be charged with payment of any part of the purchase money of said farm, which would inevitably result in defeating that intention and depriving three of the devisees of their legacies."

The reasoning there applies to this case. The deceased had sufficient property to give each of the four devisees a specific portion, provided the Wood-Street property was not to be exonerated from the encumbrance by her estate. She did not have sufficient property to make the devises named in the will, if her estate was to be charged with such encumbrance. She must have intended each part of her will to take effect. She intended the minor child, Sarah Maclean, to have the home place. She intended, and expressly directed, that her daughter, Allina Hoffman, should have sixty acres free of all encumbrance. She intended and expressly directed, that her son, Finley Campbell, should pay the one-thousand-dollar mortgage out of the hundred acres given to him. If she had intended him to pay any other mortgage, why did she not mention it when she mentioned the one-thousand-dollar mortgage? The claim is made that by the deed there was an implied covenant on the part of the grantor that the estate was free from encumbrances made by the grantor at the time of the conveyance. (Citing Civ. Code, sec. 1113.)

We do not think there is any consideration for such implied covenant in a deed of gift. Love and affection was a sufficient consideration to support the executed deed to the daughter and her husband of the title subject to the mortgage. It is

not a sufficient consideration to hold the property specifically devised as liable on the implied covenant. (2 Rawle on Covenants for Title, pp. 666, 667, and notes; *Duvoll* v. *Wilson*, 9 Barb. 487.) Nor do we consider the rights of the grantees, in this case under the deed, as different from what they would have been as devisees under the will.

In the *Estate of Wisner*, 20 Mich. 442, the husband conveyed the homestead to his wife subject to a mortgage of three thousand dollars. The day after making the deed he made a will by which he devised the same property to the wife. It was held that the mortgaged premises constituted the primary fund out of which the debt should be paid. In the opinion it is said: "If it be true that there was no personal estate, the burden of the mortgage debt could not be averted from the homestead without discriminating between the real estate conveyed to the wife and that devised to the children, in order to impose a burden upon the latter which originally devolved upon the former. It is quite certain that a course of that kind could not be based upon the general doctrine of marshaling as between real and personal estate, and if allowable in any case, it could be so only upon reasons which are totally wanting here."

The case *In re Heydenfeldt*, 106 Cal. 434, is not in conflict with what has been here said. There the testator had sufficient unencumbered and unproductive real estate to pay off the encumbrances on the specific devises. He expressly directed his executors to pay all his debts from the proceeds of the sale of such property. The debts which he owed, secured by mortgage, were all the debts in any way owing by him. The court held that the conclusion was irresistible that the deceased intended that his executors should sell the unencumbered property and from the proceeds pay off the mortgage debt.

It follows that the order should be reversed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the order is reversed.

McFarland, J., Van Dyke, J., Shaw, J.,
Angellotti, J., Lorigan, J.