[Civ. No. 8619.    Fourth Dist., Div. Two.    Aug. 20, 1968.]

Estate of ROY P. DOLLEY, Deceased. DENISE MENNES DOLLEY, Petitioner and Appellant, v. ROBERT C. DOLLEY, as Co-executor, etc., et al., Objectors and Respondents.

Charles J. Katz and Samuel W. Blum for Petitioner and Appellant.

Painter, Templeton, Miller & Carlin and Louis Miller for Objectors and Respondents.

KERRIGAN, J.—This is an appeal from a decree [judgment] denying a petition to determine heirship, wherein the petitioner sought an order compelling the coexecutors of the decedent's estate to satisfy and exonerate an indebtedness secured by a deed of trust upon a Laguna Beach residence owned by petitioner and decedent as joint tenants.

During his lifetime, the decedent Roy P. Dolley had been a prominent and successful attorney. He was killed in an automobile accident on July 22, 1964. At the time of his demise, he was living with the petitioner, his surviving wife, in Laguna Beach. In addition to his widow, he was survived by two adult children of a previous marriage, Robert C. Dolley and Lynda Dolley Ward, the respondents herein.

On September 29, 1961, Roy P. Dolley executed his last will and testament which contained, *inter alia,* the following provisions:

"First: I declare that I am married, that my wife's name is Denise Mennes Dolley; that there are no children of this marriage; that I have two children by a previous marriage, to wit: a son, Robert C. Dolley, and a daughter, Lynda Dolley Ward; that I have no deceased children, and that all of my property of every kind is my separate property.

"Second: I direct my executor to pay all of my just debts and expenses of my last illness and funeral as soon after my death as convenient.

"Third: I give to my wife, Denise Mennes Dolley, if she shall survive me, my jewelry, clothing, and all other personal effects, collection of books, silverware, furniture, pictures, furnishings, and all household effects acquired after date hereof and which at the time of my death shall be in, about or used in connection with any home hereafter acquired, and any and all automobiles which I may own at the time of my death. I *also give my wife,* if she survives final distribution, *any home hereafter acquired and in which she and I are living at the time of my death.*

"Fourth: It is my intention hereby to dispose of all real and personal property which I have the right to dispose of by will, including any and all property as to which I may have a power of appointment by will. It is my further intention that my wife, Denise Mennes Dolley, *shall be required to elect whether she shall take under this will or the rights given her by law.* In the event my wife shall elect to take under this will she shall not be entitled to a probate homestead, exempt property nor a family allowance out of my estate. If my wife

should elect to take the rights given her by law, then the provisions of this will in her favor other than those of article Third shall be of no effect and the remaining provisions of this will shall be fully effective the same as if my wife had predeceased me.

"FIFTH: [Specific bequests totaling the sum of $27,000 were effected to devisees other than the testator's wife and two surviving children.]

"SIXTH: I give, devise and bequeath to my wife, Denise Mennes Dolley, the sum of $100,000 . . .

"SEVENTH: I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal and wherever situated, including all lapsed and failed legacies and devises, to Robert C. Dolley, my son, as to sixty per cent, and to Lynda Dolley Ward, my daughter, as to forty per cent.

"EIGHTH: I direct that *all* succession, inheritance and other death *taxes* or duties imposed upon or in relation to any property owned by me at the time of my death or required to be included in my gross estate under the provisions of any tax law, *shall be paid out of the residue of my estate* without any charge therefor against any specific bequest or devise hereunder, or against any assets not included in my probate estate.

". . . . . . . . . . . .

"TWELFTH: I hereby appoint as my executors of this will Robert C. Dolley and Marcelle Vorhis to serve without bond. . . ." [Italics supplied.]

Following execution of his will, the testator entered into an agreement in March 1963 to purchase a home for himself and Denise at 314 High Drive, Laguna Beach, for the sum of $51,500, said sum being payable in cash through escrow. On April 5 he submitted an application to a savings and loan association for a $40,000 loan, and the same was granted. A promissory note and deed of trust were executed by the buyers on April 11. Following the granting of the loan, the escrow closed and the residence was acquired by joint tenancy deed recorded on April 25, 1963, subject to the aforesaid $40,000 encumbrance.

Thereafter, Roy and Denise resided in the Laguna Beach residence until the husband's demise. The sum of $39,000 remained unpaid on the note secured by deed of trust at the time of his death.

In August 1964 decedent's will was admitted to probate

and decedent's son, Robert, and Marcelle Vorhis were appointed executors thereof. An inventory and appraisement was filed reflecting estate assets in excess of $900,000. In December 1964 petitioner filed an election to take under the last will and testament, as required by article Fourth of the will.

A dispute arose between the executors and the widow over payment of the $39,000 balance due on the aforesaid promissory note secured by deed of trust held by the loan association. The executors refused to discharge the trust deed encumbrance, and the widow maintained that she was entitled to receive the home free and clear of the encumbrance. Consequently, in January 1966, the widow filed a petition to determine heirship to require the executors to pay the balance due to the lending institution and to discharge the encumbrance on the home. The petition, in substance, alleged that the testator intended, under the provisions of his will, to give her the home free and clear of the encumbrance, and that the said indebtedness secured by the deed of trust be paid by the coexecutors of his estate. The coexecutors filed written objections to the petition wherein they did not deny any of the allegations of the petition, but alleged certain affirmative defenses. The adult son and daughter of the decedent also filed separate statements of interest in the estate and properly claimed that they were entitled to receive the residue of their father's estate.

When the cause came on for hearing of the petition, statements of interest and objections, the trial court refused petitioner's offer to introduce parol evidence in support of the allegation to the effect that the testator intended exoneration. After argument by counsel, the court denied the petition to require exoneration of the note and deed of trust on the home on two premises: (1) The $39,000 indebtedness was a "purchase money" debt and did not constitute an obligation for which payment was required to be made by decedent's estate; and (2) petitioner became owner of the residence as surviving joint tenant and did not take as a specific devisee under the provisions of decedent's last will and testament. Thereafter, findings and conclusions were filed and a decree was entered adjudging that the petition be denied, and determining that the executors were not required to pay the $39,000 indebtedness or to discharge the lien.

In attacking the trial court's findings and decree, the widow charges error in the following respects: (1) Inasmuch

as the respondents' pleadings failed to deny the allegations of the heirship petition relating to the testator's intent to devise her the home unencumbered, the trial court was precluded from making a finding to the contrary; (2) exoneration was required as a matter of law; (3) the testator intended, under the provisions of the will, to exonerate the debt at the expense of the estate; and (4) the encumbrance was not a purchase money obligation within the meaning of the anti-deficiency statutes and, therefore, the finding that the estate was not legally responsible for the debt was untenable.

▮ Preliminarily, petitioner maintains that the allegations of her petition to determine heirship were not denied by the respondents, and that inasmuch as she alleged in her petition that it was the intention of the testator to pay the encumbrance and exonerate the home from the lien of the deed of trust, the trial court was precluded, as a matter of law, from making a contrary finding. ▮ Generally, where allegations contained in a pleading are not denied, the matters therein alleged must be deemed admitted. (2 Witkin, Cal. Procedure (1954) Pleading, § 516, p. 1509.) An allegation of fact that is admitted, or is not denied, is conclusive, and any finding contrary to such admission is erroneous and cannot support the decree. (*G & P Elec. Co.* v. *Dumont Constr. Co.,* 194 Cal.App.2d 868, 884 [15 Cal.Rptr. 757] ; *Horney* v. *Horney,* 118 Cal.App.2d 679, 682-683 [258 P.2d 555].) However, where a case is tried on the theory that a matter is in issue and evidence thereon is received without objection, it is too late, on appeal, to attack the finding. (2 Witkin, Cal. Procedure (1954) Trial, § 116, pp. 1848-1849.) ▮ The record in this case discloses that at the inception of the hearing, respondents' counsel advised the trial court that his clients objected to the petition on the merits in every respect, particularly with reference to the allegations contained therein to the effect that the testator intended to devise the home property to the petitioner with the title unencumbered. The court indicated that it was proceeding on the theory that the allegations of the petition with reference to the exoneration issue were deemed denied by respondents. Moreover, before commencement of the hearing, a memorandum of points and authorities was filed by petitioner's counsel in which he conceded that the executors denied any obligation to pay the encumbrance. It necessarily follows that petitioner is estopped from raising the issue on appeal inasmuch as the cause was tried on the theory that the allegations of the petition relative to the testator's intent

were in issue. (See *Estate of Armstrong*, 241 Cal.App.2d 1, 7 [50 Cal.Rptr. 339].)

▮ Furthermore, in a petition to determine heirship, the real parties-in-interest are the heirs and not the executors. (*Estate of Lynn*, 109 Cal.App.2d 468, 473 [240 P.2d 1001]; *Estate of Kessler*, 32 Cal.2d 367, 369 [196 P.2d 559].)

▮ Consequently, the representatives' pleading could not, in any manner, impair the rights of the son and daughter of the decedent. Supplementally, under section 1080 of the Probate Code, governing the procedure for filing a petition to determine heirship, it is expressly provided that after the petition is filed "[a]ny person may appear and file a written statement setting forth his interest in the estate. No other pleadings are necessary and the allegations of each claimant shall be deemed to be denied by each of the other claimants to the extent that they conflict with any claim of the latter. . . ." The son and daughter of the decedent filed a statement of interest as required by the express provisions of the statute, and such a response was all that was required. (See 2 Condee, Probate Court Practice (2d ed. 1964), § 1518, pp. 335-339.)

▮ Secondly, petitioner contends that article Third of decedent's will devised her "any home hereafter acquired in which she and I are living at the time of my death," and that such language represents a *specific* devise of real property (see *Estate of Painter*, 150 Cal. 498, 505 [89 P. 98, 11 Ann.Cas. 760]; Prob. Code, § 161), which is entitled to exoneration by operation of law. ▮ When a testator expressly provides in his will that his debts, expenses of administration or family allowance be paid from a particular fund or source, such debts and charges must be paid in accordance with his direction; when the testator does *not* express the source from which the payment of debts, expenses of administration, charges and family allowance are to be paid, such debts, charges, expenses, fees and allowances must be paid from the residue of the estate; *specific* devises and legacies are exempt from such liability where there are other sufficient assets in the estate not specifically devised or bequeathed. (Prob. Code, § 750; *Estate of Loescher*, 133 Cal. App.2d 589, 592-593 [284 P.2d 902]; *Estate of Welsh*, 89 Cal.App.2d 43, 49 [200 P.2d 139]; *Estate of Babb*, 200 Cal. 252, 260 [252 P. 1039].) ▮ Simply stated, section 750 of the Probate Code requires that debts, expenses of administration and family allowance shall be paid from such sources as

the testator directs; if he expresses no intention with respect to the source, such charges are to be paid from the residue of the estate. (*Estate of Loescher, supra; Estate of Welsh, supra.*)

In support of her argument of exoneration, petitioner submits that the testator's will herein made no specific designation of the source from which his debts were to be paid, but that no provisions of the will indicated any intent to abrogate the general rule that the residue of the estate is liable for the debts, where there are adequate residual funds for payment of such obligations. The estate herein was appraised in close proximity to a million dollars, and the court found that there were sufficient funds, after payment of claims, expenses of administration and specific bequests, to satisfy the $39,000 encumbrance from the residuum.

██ Both at common law and under California law, a devisee of specific real property, which is subject to an encumbrance placed thereon by the testator to secure a debt incurred by the testator, is entitled to have the real property so devised *exonerated* from such encumbrance and the debt paid as an expense from the residue of the estate, unless the will expresses a contrary intention. (See 4 A.L.R.3d 1023, 1029-1030.) ██ As between the executors and the devisees, legatees and heirs of the decedent, a secured debt is to be treated and paid by the executors in the same manner as are the general, unsecured debts of the decedent, and it is immaterial that the holder of such encumbrance does not present a claim against the estate but prefers to look to the future enforcement of his lien against the specific encumbered property only. (*Estate of de Bernal,* 165 Cal. 223, 234-235 [131 P. 375, Ann.Cas. 1914D 26]; *Estate of Matthiessen,* 23 Cal.App.2d 608, 611-614 [73 P.2d 1267].) The rationale for the common law rule of exoneration is that personal property is considered the primary fund for the payment of the debts of the decedent, and that a specific devisee of land has the right to call on the personal representative to exonerate the land by discharging the mortgage debt thereon out of the personal estate inasmuch as the personal estate enjoyed the benefit of the money for which the mortgage was given. (*Estate of Porter,* 138 Cal. 618, 622 [72 P. 173]; see 53 Cal.Jur.2d, Wills, § 330, pp. 591-592.) The will being reviewed does not contain any language indicating the note secured by trust deed was *not* to be satisfied as an estate obligation. ██ Where no contrary intent is found in the will, exoneration of a mortgage on a

specific devise will be granted without more. It is unnecessary to find a positive or affirmative direction for the payment of the mortgage upon specifically devised property for which the decedent is personally liable, inasmuch as under such circumstances exoneration is allowed as a matter of right. (*Estate of de Bernal, supra.*)

Notwithstanding the efficacy of the foregoing authorities enforcing the common law rule of exoneration, petitioner's argument assumes that the doctrine applies to joint tenancy interests as well as interests acquired by will. In joint tenancy situations, the survivor takes his interest by virtue of the joint tenancy deed and not as an heir or devisee. One of the incidents of joint tenancy is that, upon the death of one of two joint tenants, the survivor thereupon becomes the owner of the entirety, not by descent, but by survivorship and in virtue of the original grant creating the joint tenancy. (*Estate of Harris,* 169 Cal. 725, 726 [147 P. 967].) The probate court has no jurisdiction over joint tenancy property except to the extent conferred by statute. (*Goldberg* v. *Goldberg,* 217 Cal.App.2d 623, 628 [32 Cal.Rptr. 93]; see Prob. Code, §§ 1170-1175.)

Foreign authority exists to the effect that a surviving joint tenant does not qualify for exoneration of a mortgage on joint tenancy property unless there is language in the decedent's will clearly expressing an intention that the mortgage debt be paid. (*Gardner* v. *Waldman,* 83 R.I. 12 [111 A.2d 922]; *In re Keil's Estate,* 51 Del. 351 [145 A.2d 563, 146 A.2d 398, 76 A.L.R.2d 996]; see 76 A.L.R.2d 1004, 1012.)

Two cases involving exoneration of nonprobate property are submitted by petitioner in support of her position for exoneration of nonprobate property. (*Estate of Metcalfe,* 199 Cal. 716 [251 P. 202]; *Stieff* v. *Millikin,* 162 Md. 245 [159 A. 599].) However, in *Metcalfe,* the testator directed that the encumbrance on nonprobate property be paid. Here the will is silent regarding the trust deed indebtedness. In *Stieff,* the husband's will devised a residence to his wife which was owned by them as tenants-by-the-entirety; the residence was encumbered by a mortgage; the mortgage was the husband's only debt; the will was held ineffectual to dispose of the property to the wife, but the court emphasized that if the husband, a layman, had not been mistaken as to his power to pass the residence by will, the wife would have been entitled to exoneration under the common law rule, and the court decreed it would not deny exoneration because of the hus-

band's mistaken belief that the will would be sufficient to pass the property. In *Stieff*, the will was executed after the purchase of the residence and the vesting of title as tenants-by-the-entirety; the will here was made two years before the acquisition of the joint tenancy home and, patently, the testator did not misconceive the legal effect of a joint tenancy deed because of his background in the law.

The will herein expresses no intent on the part of the decedent to exonerate the note secured by trust deed on the family residence. Conversely, it does not express an intent that it not be paid. The will is silent as to payment or nonpayment of the encumbrance. The decedent bequeathed his wife the sum of $100,000 tax free, together with personal effects, automobiles, furniture, and household furnishings acquired after the date of the will and used in connection with any home thereafter acquired. The home was not purchased until 1963, nearly two years after the execution of the will. Title to the Laguna Beach residence was taken in joint tenancy. The decedent's will declares his intention to ''dispose of all real and personal property which I have a right to dispose of by will.'' The decedent was an attorney and, inferentially, judging from the size of his estate, a very successful one. Obviously, he possessed legal knowledge that joint tenancy property is not subject to testamentary disposition. He did not change his will after the home was acquired so as to provide for exoneration of the encumbrance out of the residue of the estate.

In urging that it was the testator's intent to exonerate the Laguna residence, petitioner submits that the provision in her husband's will directing his executors to ''pay all my just debts'' constitutes a direction to pay the note secured by deed of trust.

A similar argument was advanced and found unmeritorious in *Estate of Cummings,* 263 Cal.App.2d 661 [69 Cal.Rptr. 792], In *Cummings,* the will provided that the residuary estate be sold and reduced to cash to defray expenses of last illness, expenses of administration and taxes. The claimant contended that this provision required the probate estate to pay taxes attributable to non-probate assets represented by gifts made to the claimant in contemplation of death after the will was executed. The court, in rejecting the claimant's argument, noted that: ''The will neither mentions taxes on property passing outside of probate nor indicates that the testator considered exonerating from taxes any gifts other than those which arose from transfers of property under his

will, and we may presume that the testator did not intend to say that which he might have said but did not say in his will. (*Estate of Hill,* 214 Cal.App.2d 812, 816 [29 Cal.Rptr. 814].)''

In the case under review, it may be presumed that if the testator intended his wife to take the family home unencumbered, this could easily have been accomplished by the inclusion of not more than three words, such as ''free and clear.'' Since the primary consideration in construing a will is to determine the intention of the testator *as expressed in the language used* (*Estate of Kincaid,* 174 Cal.App.2d 84, 88 [344 P.2d 85]; *Estate of Maxwell,* 158 Cal.App.2d 544, 548 [322 P.2d 1018]), it must be concluded that there is absolutely no evidence indicating that the testator intended that the trust deed encumbrance be discharged from the residue of the probate estate.

Petitioner urges that decedent intended to exonerate the encumbrance on the home because he was a thoughtful and benevolent man and it would be natural for him to want his wife to receive the home unencumbered. This argument is based on pure conjecture. His will required her to elect whether to take under the will or by virtue of the rights provided by law as a surviving wife, and in the event she elected to take under the will, he directed that she should not be entitled ''to a probate homestead, exempt property, nor family allowance out of my estate.'' Since the decedent required his wife to surrender these valuable rights as a condition for taking under the will, it is somewhat inconsistent to claim that he would have wanted her to have the home unencumbered.

Finally, our conclusion that petitioner is not entitled to exoneration is further strengthened by the fact that the testator herein was not personally liable for the debt on the home. Conclusive evidence exists that the security here involved was a purchase money obligation, and the trial court so found.

At common law, exoneration of a mortgage upon specifically devised property was permitted only if the testator was personally liable for the debt. (*Estate of Brown,* 240 Cal.App.2d 818, 820 [50 Cal.Rptr. 78]; see *Estate of Porter, supra,* 138 Cal. 618, 622.) In applying the common law rule, the courts have denied the claim of a specific devisee to exonerate where the mortgagee could not recover a personal judgment against the testator. (6 Page on Wills (3d ed. 1962), § 52.19, p. 192; 4 A.L.R.3d 1023, 1037.) It has generally been held that the right of a decedent's devisee to have the devised realty

exonerated from a lien thereon at the expense of the personal estate depends on whether or not the lien is security for a personal obligation of the decedent. (97 C.J.S. Wills, § 1316, p. 224.) It therefore follows that under the common law rule of exoneration the testator must be personally liable for the debt on the encumbered real estate specifically devised, and that unless he was personally liable, the doctrine of exoneration may not be applied. Section 580b of the Code of Civil Procedure eliminates such liability as a matter of law. (*Estate of Brown, supra,* 240 Cal.App.2d 818, 820.)

In *Estate of Brown, supra,* the reviewing court considered a situation where the testatrix devised her home and real property to a relative; the specific real property was subject to a purchase money trust deed; in holding that the devisee was not entitled to exoneration of the trust deed debt, the court used the following language: "At common law, however, for exoneration to be applicable there was the requirement that the debt which the lien secured be the personal obligation of the testator. Here decedent was not personally liable because she had placed a purchase money trust deed on the property. (See Code Civ. Proc., § 580b.) . . . We also hold, in a case of apparent first impression, that California law does not require exoneration where the testator had no personal liability to pay the encumbrance against the specifically devised property. . . ."

In the case before us, the home vested in petitioner by joint tenancy deed and not as a specific devise under decedent's will. However, even assuming, *arguendo,* that the home became vested in petitioner as a specific devise under decedent's will, and not by virtue of the joint tenancy deed, then the ruling by the reviewing court in *Brown, supra,* constitutes a complete answer to her contention that she has a right to exoneration of the security.

Judgment affirmed.

McCabe, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 17, 1968.